# SUPREME JUDICIAL COURT

##### FOR THE

### COUNTY OF WORCESTER, OCTOBER TERM 1847,
### AT WORCESTER.

═══════

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE, } Justices.
Hon. CHARLES A. DEWEY, }

───────────

## Manassah S. Forbush vs. Franklin Lombard.

A declaration, in an action of trespass *quare clausum fregit*, described the close as bounded northerly by land of S. and others, easterly by the old N. B. Turnpike, southerly by the road leading to W., and westerly on W. River. *Held*, that this description sufficiently complied with *St.* 1839, c. 151, § 3, which requires that "the close or place of the alleged trespass shall be designated by name or abuttals, or other proper description."

By a grant of a mill, the land under the mill, and land adjacent thereto, so far as necessary to its use, and commonly used with it, and no further, will pass by implication: So of an exception of a mill from a grant of land.

A. granted to B., by deed, a tract of land, bounded on all sides by the lands of persons named, excepting therefrom "the mills and water privileges" then owned by A.: At the time of this grant, about an acre of land lay common and unfenced, as a mill yard, and was used for putting timber thereon, and for passing and repassing to and from the mills, but part of that acre was afterwards used, by the owners of the mills, for a garden, and for the site of buildings not connected with the mills. *Held*, that the land which had been thus used for such buildings and for a garden was not within the exception in A.'s deed.

TRESPASS for breaking and entering the plaintiff's close, described in his declaration as "lying in the northerly part of

VOL. XIII.                    10

Westminster, bounded northerly by land of Franklin Smith and others, easterly by the old North Branch Turnpike, southerly by the road leading to Westminster, and westerly by Whitman River." The declaration alleged that the defendant dug up and subverted the plaintiff's soil, and erected thereon three small buildings and a fence, and for a long time, viz. from the 1st of March 1839 to the 14th of February 1845, with force, kept and continued said buildings and fence upon said close, against the plaintiff's will, and passed and repassed upon and over said close with cattle, &c. The trial was in the court of common pleas, before *Merrick*, J.

The defendant, before pleading, moved that the writ might be dismissed, on the ground that there was not such a description of the *locus in quo*, in the declaration, as is required by *St.* 1839, c. 151. This motion was overruled. The defendant then pleaded the general issue, and filed a specification of defence.

The plaintiff gave in evidence a mortgage deed, dated December 6th 1828, and duly recorded, from Jonathan Whitman to Samuel Hilton, of a tract of land in Westminster, bounded by land of James Puffer and other persons named, " together with the buildings on the same ; excepting from the above tract of land so much thereof as has been set o'l to Rebecca Whitman, as her dower, and also excepting the mills and water privileges now owned by me ; intending hereby to convey all the land and buildings owned by me in the northerly part of Westminster aforesaid, excepting the mills and water privileges aforesaid." And it was admitted that the *locus in quo* was included within the land described in said mortgage deed, unless it was excluded by the last exception.

The plaintiff then gave in evidence a deed dated May 8th 1830, executed by the administrator of said Jonathan Whitman, conveying to the plaintiff the interest which said Jonathan had, at the time of his death, in all the land and buildings mentioned in the aforesaid mortgage deed to Samuel Hilton : Also a quitclaim deed, dated June 5th 1830, given

by said Hilton to the plaintiff, releasing the premises mortgaged by said Jonathan Whitman to said Hilton, by the aforesaid deed of December 6th 1828.

The defendant then introduced a deed, dated March 14th 1829, from said Jonathan Whitman to Samuel Mossman, conveying " one undivided half of the saw mill, northerly of said Mossman's house, and adjoining the grist mill of Aaron Cowles, with all the privileges and appurtenances thereunto belonging, as to water privilege and land for mill yard," &c. : Also a mortgage deed, dated March 26th 1829, from said Whitman to Anna Mossman, conveying the other half of said saw mill. And it was admitted that this mortgage had been foreclosed by said Anna. The defendant also introduced a deed, dated June 6th 1837, from said Anna to Asaph Mossman, releasing to him one half of said saw mill ; also a deed, dated February 14th 1843, from said Asaph to Samuel Mossman, releasing to him one half of said saw mill ; also a deed, dated December 6th 1844, from said Samuel to the defendant and three others, releasing to them " a certain saw mill, adjoining the chair shop of Franklin Lombard," (the defendant,) " situated in the northerly part of said Westminster, with all the privileges thereunto belonging, as to water privileges and land for a mill yard," &c. ; and also a deed, dated February 14th 1829, from said Jonathan Whitman to P. & A. Cowell, conveying to them " the grist mill and chair shop, and all other buildings belonging to the same." And it was admitted that the defendant had the same title to the grist mill and chair shop, and to the mill yard adjoining them, which P. & A. Cowell had by virtue of the aforesaid deed from Jonathan Whitman to them.

It appeared, on the trial, that the mills aforesaid, the dam and pond, together with about one acre of land for a mill yard, were within the limits of the boundaries described in the aforesaid mortgage deed from Jonathan Whitman to Samuel Hilton ; that said mill yard was situated southerly from said mills, and included all the land between them and the road, and had been used as such ever since the mills were

built; and that said mill yard had been open and common, for the purpose of putting timber there, drawing the same to and fro, and passing and repassing to and from said mills, as is usual.

The plaintiff introduced evidence tending to show that he had frequently stuck up boards upon the easterly side, on said mill yard, and had passed over and through the yard, as other persons did; and that it was common for those who had lumber sawed at the mill to stick it up in the yard.

It was also proved or admitted, that before the defendant purchased the mills, to wit, ten or fifteen years before the trial, some of those who then owned the mills, converted a barn, which adjoined the chair shop, into a dwelling-house, dug a well within the limits of the mill yard, and afterwards erected a barn and dry shop within the yard. And the plaintiff offered to prove, and produced evidence to prove, that the defendant, in 1843 or 1844, rebuilt a fence, and made a yard for cattle, within the mill yard, and planted vines therein, and raised garden vegetables in said back yard; also, that the defendant, in 1843, erected a privy, in connexion with said dwelling-house, within the limits of the mill yard; and that he, for the several last years since he purchased the mills, and up to the commencement of this action, had occupied said dwelling-house, and used the mill yard in going to and from said dwelling-house, barn, &c. and had yarded a cow there, all within the limits of the mill yard.

The judge ruled, that if the jury should find the facts to be such as the evidence introduced by the plaintiff tended to prove, then the plaintiff had sufficient title and possession of the *locus in quo* to maintain trespass; and that some of the defendant's acts, if the evidence was believed, constituted a trespass, for which this action might be maintained. The defendant thereupon submitted to a verdict for the plaintiff and alleged exceptions to the several rulings of the judge.

This case was argued at September term 1846.

*G. Parker & Gale*, for the plaintiff.

*N. Wood & G. H. Whitney*, for the defendant.

WILDE, J. Previously to the trial of this case, and before pleading, the defendant moved to dismiss the writ, on the ground that the *locus in quo* was not described with sufficient certainty, in compliance with *St.* 1839, *c.* 151, § 3, which provides, that " in actions of trespass *quare clausum fregit*, the close or place of the alleged trespass shall be designated, in the writ and declaration, by name or abuttals, or other proper description." This objection was overruled, and we think rightly. The close, in which the trespasses were alleged to have been committed, was described in the declaration as abutting on two sides by highways, on another side by a river, and on the remaining side by another lot of land. This description, in an action of trespass, is sufficiently certain, although, for obvious reasons, in a writ of entry brought for the purpose of settling a disputed line, the demanded premises must be described by reference to known and visible monuments, and not by a general reference to the line of dispute. But the reasons, on which this rule of pleading is founded, do not apply to an action of trespass, by which the title to the *locus* cannot be definitely settled, and in which damages only can be recovered.

The general question on the merits is, whether the evidence reported, if believed by the jury, would have authorized them to find that the plaintiff had such a title and possession of the *locus* as would be sufficient to maintain this action.

The plaintiff's title is derived from Jonathan Whitman, from whom the defendant also claims title; and the question of title depends on the construction of the exception in the deed from the said Whitman to Samuel Hilton, who conveyed his title to the plaintiff. It is admitted that the deeds from Whitman to Hilton, and from Hilton to the plaintiff, include the *locus*, unless it is excluded by the exception. By the deed from Whitman to Hilton the mills and water privileges, which are now owned by the defendant, were excepted, and did not pass by the grant; and the question is, whether the mill yard also was included in the exception.

10 *

We think the rule of construction is well established, that, by the grant of a mill, the land under the mill and adjacent thereto, so far as necessary to its use, and commonly used with it, will pass by implication. *Blake* v. *Clark*, 6 Greenl. 436. And the same rule of construction applies to an exception in a grant. But to justify such an implication, it should be made to appear that the land adjacent was necessary for the use of the mill ; and this was not proved at the trial. On the contrary, it was proved and admitted that the land, claimed by the defendant as a mill yard, has been used for purposes disconnected with the mills. A dwelling-house and barn have been erected thereon, and part thereof has been used as a barn yard, and for raising garden vegetables. And this action is brought for erecting three other small buildings within the limits of the mill yard, so called, and continuing the same from the year 1839 to the day of the date of the writ. These facts are conclusive against the defendant's claim that the parts of the land thus used and occupied were necessary for the use of the mills. They cannot, therefore, pass as incident to a grant of the mills, or as parcel thereof. The land claimed was not fenced, nor was the mill yard designated by any known bounds. Nothing more, therefore, can be included within the exception in the deed from Whitman to Hilton, than was necessary for the use of the mills.

We therefore consider the plaintiff's title to the *locus in quo* as valid, and that he had such a possession as would enable him to maintain trespass. The plaintiff and defendant had a mixed possession, as appears by the evidence, so that the defendant has acquired no title by disseizin.

*Exceptions overruled.*